*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT CAMPBELL,

Plaintiff-Appellant,

UNPUBLISHED
February 20, 2020

v

No. 345668
Oakland Circuit Court
LC No. 2017-162025-N1

DOROTA GOLDA,

Defendant-Appellee,

and

NATIONWIDE INSURANCE COMPANY OF
AMERICA and ZURICH AMERICAN
INSURANCE COMPANY,

Defendants.

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendant, Dorota Golda, in this third-party no-fault action seeking noneconomic damages. We affirm.

This case arises from a November 19, 2014 automobile accident that took place on M-59 just before the I-75 South entrance ramp. It had recently begun snowing. Plaintiff slowed down to less than 20 miles per hour in approach to the entrance ramp. Defendant, who was also slowing in approach to the ramp, struck the rear of plaintiff's vehicle. Neither plaintiff's nor defendant's airbags deployed. Plaintiff was transported by ambulance to the emergency room, complaining of low-back and neck pain. He was x-rayed, given pain medication, and released the same day.

Plaintiff had an extensive history of low-back and leg pain due a spinal cord injury sustained in a 2001 motor vehicle accident. Between 2002 and 2014, plaintiff underwent six low-back surgeries and had been placed on disabled status by his employer. Plaintiff complained to

-1-

his spinal surgeon that his pain, which had been improving, had worsened following the 2014 accident.

In 2017, plaintiff underwent a seventh low-back surgery and filed this lawsuit alleging defendant's negligence and liability for noneconomic damages. Plaintiff testified that his preaccident lifestyle consisted of attending physical therapy, going on daily walks, doing light housework, and following sports on television and the internet. He testified that between the accident and his recovery from the 2017 surgery, all of his normal activities became considerably more difficult because of "all-encompassing pain." For a period, he was no longer able to attend physical therapy or do light housework. He also had increased difficulty sleeping.

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that (1) plaintiff's medical records merely showed a degenerative change to his preexisting condition that could not reasonably be attributed to the 2014 accident, and (2) plaintiff's sedentary preaccident lifestyle had not been affected by the accident. Plaintiff responded that his spinal surgeon had attributed the aggravation of his condition to the accident and that his medical records and testimony met his burden of production on the issue of whether his general ability to lead his normal life was affected.

The trial court granted defendant's motion for summary disposition, holding that there was a genuine issue of material fact as to the nature and extent of plaintiff's injuries, but the dispute was not material to the issue of whether plaintiff had suffered a serious impairment of an important body function. The trial court determined that there was no genuine issue of material fact that plaintiff's general ability to lead his normal life had not been affected by his impairment; his "general ability to lead his normal life remains the same." Accordingly, defendant was entitled to summary disposition. The trial court did not address defendant's argument that the accident was not a cause in fact of plaintiff's injury. Plaintiff now appeals.

Plaintiff argues that he produced evidence showing that he was unable, for a period, to perform household chores, go on walks, participate in physical therapy, and enjoy following sports to the same degree after the accident, which was sufficient to establish an effect on his general ability to live his normal life. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010).

> Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (internal quotation marks and citations omitted).]

When "there is a factual dispute concerning the nature and extent of a person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of a body function," it is for the court to determine as a matter of law "whether the injured person has suffered serious impairment of body function . . . ." MCL 500.3135(2)(a)(*ii*). In this case, the trial court determined that there was a factual dispute concerning the nature and extent of plaintiff's injuries, but that the dispute was immaterial to a serious impairment analysis. Defendant, relying on plaintiff's preaccident and postaccident answers to his physician's "low-back disability questionaires" and plaintiff's long history of low-back problems, argued that plaintiff's condition was the same before and after the accident. Plaintiff, relying on his testimony and his physician's encounter notes, argued that he sustained a new and worse injury in the accident. Therefore, plaintiff argued, the trial court did not err in determining that reasonable minds could differ on the nature and extent of his injuries.

"[W]hile an injury is the actual damage or wound, an impairment generally relates to the effect of that damage." *McCormick*, 487 Mich at 197. "Accordingly, when considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id.* (quotation marks and citation omitted).

MCL 500.3135 provides:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

* * *

(5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person,

-3-

must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.[1]

It is not at issue whether plaintiff met his burden of production as to the first and second prongs of the *McCormick* analysis: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195. As to the third prong, the trial court determined that "[p]laintiff's general ability to lead his normal life remains the same."

Plaintiff's burden was to produce evidence upon which a reasonable fact-finder could find, by a preponderance of the evidence, that his impairment "influence[d] some of [his] power or skill, i.e., [his] capacity, to lead [his] normal life." *Id*. at 201. A court must "consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. at 202. "In order to make such a determination, we compare the plaintiff's life before and after the incident." *Patrick*, 322 Mich App at 614. The question "requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id*., quoting *McCormick*, 487 Mich at 202. There is no "temporal requirement as to how long an impairment must last . . . ." *McCormick*, 487 Mich at 203.

Plaintiff argues that a change in his capacity to lead his normal life is demonstrated by his testimony that he had a more difficult time sleeping, he could not do simple housework for a period, he could not walk or drive for as long as he used to, and his ability to follow sports was marred by "all-consuming" pain.

However, plaintiff's evidence is too vague and conclusory to create a factual dispute regarding whether his general ability to lead his normal life was affected by his impairment, even when viewing that evidence in the light most favorable to him. Plaintiff's daily routine was highly similar before and after the 2014 accident: he tended to his chronic low-back pain by going to medical appointments and physical therapy, he took short walks, he occasionally did light housework, and he followed sports on TV and the internet.

---

[1] On June 11, 2019, MCL 500.3135(5)(a)-(c) was amended "to codify and give full effect to the opinion of the Michigan supreme court in *McCormick v Carrier*, 487 Mich 180 (2010)." 2019 PA 22, enacting § 1. The amendment simply expresses the Legislature's intent that the holding of *McCormick*, 487 Mich at 180, should not be revisited, as has often been proposed by litigants and jurists. See, e.g., *Patrick v Turkelson*, 503 Mich 901 (2018) (MARKMAN, J., dissenting). The amended language is included here rather than omitted, even though the events in this case occurred before the amendment, because the amendment has no substantive impact on this case–*McCormick* already governed it before the amendment. See *Buhl v Oak Park*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 340359); slip op at 5 (holding that statute applied retroactively when "plaintiff could still assert the identical cause of action against defendant, and the full range of damages previously available to a prevailing plaintiff is unchanged by the statutory amendment.").

Plaintiff's argument on appeal emphasizes his allegedly decreased capacity to do housework and take walks after the accident. Plaintiff testified that, before the accident, "[t]here may have been some very light household type work . . . chores that I would do." That statement of his preaccident household duties is so unassured that it is practically indistinguishable from his characterization of his postaccident duties—that he did "almost [no light household chores] at all."

Plaintiff's testimony regarding a change in his capacity to take walks was similarly vague. Plaintiff did not even recall that walks were a part of his daily routine until defense counsel reminded him that he had mentioned walks earlier in his deposition. Plaintiff merely asserted that he "was doing more walking before the accident." He did not know how far he routinely walked before the accident. He did not articulate how his walks had changed after the accident.

Plaintiff testified that following sports teams on television and the internet was rendered unenjoyable by "all-consuming" pain. Again, plaintiff was unable to point to any facts in support of his assertion. To the contrary, he testified that he attended "[maybe] one or two" baseball games per year before *and after* the accident.

Given his inability to explain how his impairment impacted specific activities, plaintiff is left with the nebulous assertion that increased pain made his already sedentary lifestyle more arduous after the accident. On February 10, 2014, nine months before the accident, plaintiff reported to his spinal surgeon that his pain was an 8 to 9 out 10 in his back and a 6 to 8 in his leg. He reported the same pain levels at multiple postaccident appointments. His preaccident and postaccident answers to his spinal surgeon's "low-back pain disability questionnaire" were identical, with the exception that he reported sleeping "only ¼ of [his] normal amount" after the accident as opposed to "½ of his normal amount" before the accident. It is simply not possible to articulate in a fact-specific manner how plaintiff's normal life, which was already defined by his impairment before the 2014 accident, changed after the accident. Therefore, the trial court did not err in concluding that there was no genuine issue of material fact as to whether plaintiff's impairment affected his general ability to lead his normal life.

Further, as defendant argued in the trial court and argues on appeal, even if plaintiff had met his burden of production on the third prong of the *McCormick* test, it still would have been appropriate to grant summary disposition to defendant for lack of causation. Although the trial court did not address defendant's argument, this Court may affirm a trial court's grant of summary disposition on an alternate ground not addressed and decided by the trial court. See *Patrick*, 322 Mich App at 615-616, citing *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 12; 708 NW2d 778 (2005). In this case, the trial court solely focused on the issue of plaintiff's impairment and did not address whether defendant's negligence was a cause in fact of plaintiff's injury. Defendant argues that plaintiff cannot establish that his preexisting, degenerative condition was aggravated or diverted from its normal course by his minor collision with defendant. We agree.

"Proximate causation is a required element of a negligence claim." *Patrick*, 322 Mich App at 616. "[A] court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Id*. (quotation marks and citation omitted). "Establishing cause in fact requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not,

but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 617 (quotation marks and citation omitted).

In 2001, plaintiff sustained a spinal cord injury in a motor vehicle accident. At his deposition in this case, plaintiff testified that he only had one surgery as a result of that accident. Medical records tell a different story. In 2002, plaintiff underwent a laminectomy that did not relieve his discomfort. In 2003, plaintiff underwent a spinal fusion that was also unsuccessful in relieving his low-back pain. In 2005, a neurosurgeon removed hardware from the 2003 spinal fusion and performed another laminectomy. Between 2005 and 2006, plaintiff had another surgery to remove a screw that was too close to a nerve root. In June 2006, plaintiff underwent another laminectomy. Plaintiff sought second opinions from two surgeons who believed "problems with the fusion" were to blame for his continuing low-back pain.

Plaintiff underwent a "complex revision," partial laminectomy, and diskectomy on January 14, 2009. Plaintiff's postoperative diagnoses were degenerative disk disease, spondylosis, and pseudarthrosis with postlaminectomy syndrome. In 2013, plaintiff underwent a fifth laminectomy because of severe and debilitating low-back and leg pain. On February 10, 2014, nine months before the 2014 accident, plaintiff reported to his spinal surgeon that his pain was 8 to 9 out of 10 in his back and a 6 to 8 out of 10 in his left leg.

Plaintiff was transported to the emergency room by ambulance immediately following the 2014 accident. He was x-rayed, given pain medication, and released the same day. His attending physician's summary concludes: "No apparent significant injuries other than musculoskeletal strain."

In support of his assertion that the 2014 accident significantly aggravated his preexisting injury, plaintiff relies on brief notes from his spinal surgeon. Summarizing an October 19, 2015 visit, the surgeon noted that "[plaintiff] sustained a car accident in November 2014 which seemed to aggravate everything here." That same summary noted that an MRI "showed degenerative changes of the discs at L2-L-3 and facet arthritic changes." On May 5, 2017, plaintiff's surgeon submitted a note apparently written in anticipation of litigation that reads, in its entirety: "There was an objective finding following the auto accident of November 19, 2014 and as a result of the accident and my findings [that plaintiff] needed surgery and continues to be disabled."

Simply put, there is no evidence on this record of any *traumatic* injury traceable to the 2014 accident. Plaintiff had a 13-year preaccident history of severe, debilitating back pain, which required seven preaccident spinal surgeries. The ER physician, examining plaintiff shortly after the accident, found "[n]o significant injuries other than musculoskeletal strain." Plaintiff's subjective complaints before and after the accident were substantively identical. Even giving full credit to the spinal surgeon's assertion that the accident "seemed to aggravate" plaintiff's condition, no reasonable fact-finder could find that plaintiff's minor collision with defendant more likely than not caused his injuries. The spinal surgeon's bare assertion of "an objective finding" that the 2014 accident required an eighth spinal surgery lacks exactly what it asserts—an objective basis. The only postaccident changes to plaintiff's diagnoses were "degenerative" and "arthritic" in nature. Therefore, defendant was also entitled to summary disposition on the ground that plaintiff cannot establish that defendant's negligence was a cause in fact of his injuries.

Affirmed. Defendant is entitled to costs as the prevailing party. See MCR 7.219(A).


/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto